IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:19-CR-00150-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JOHN PHILIP STIRLING, | |
| Defendant. | |

**BILLY J. WILLIAMS**
United States Attorney
**BYRON G. CHATFIELD**
**SUZANNE A. MILES**
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
(503) 727-1107

    Attorneys for Plaintiff

**LISA HAY**
Federal Public Defender
**JESSICA GREENLICK SNYDER**
Assistant Federal Public Defender
101 S.W. Main Street
Suite 1700
Portland, OR 97204
(503) 326-2123

    Attorneys for Defendant

1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant John Philip Stirling's Motion (#37) to Dismiss. For the reasons summarized below and stated on the record during oral argument on December 18, 2019, the Court **DENIES** Defendant's Motion to Dismiss.

## FACTUAL BACKGROUND

The following facts are taken from the parties' filings related to Defendant's Motion to Dismiss.

On April 9, 2019, a Coast Guard vessel (the cutter Alert) made visual contact with a ship (the Mandalay) piloted by Defendant John Phillip Stirling. The Mandalay was sailing on the high seas, and it had a hull marking naming Seattle as its home port. It was not, however, flying a flag and did not have any visible registration numbers.

A Coast Guard boarding team approached alongside the Mandalay, turned on its light and siren, and used a loudspeaker to demand contact with the Mandalay's crew. The team announced: "This is the United States Coast Guard. Come out with your hands in the air." No one complied. The boarding team then contacted the Mandalay through VHF Marine radio, and Defendant responded. Coast Guard Officer Caitlin Piker told Defendant to come to the deck of the Mandalay, but Defendant stated he could not walk due

to the weather conditions and stated he was pumping the bilge. Officer Piker asked Defendant for his ship's nationality. Defendant claimed Canadian nationality for the boat and himself.[1]

Because Defendant's nationality claim conflicted with the Mandalay's hull marking that named Seattle as its home port, the Coast Guard authorized the boarding team to board and to attempt to determine the vessel's nationality. The boarding team alerted Defendant of its intent to board and asked him to reposition the Mandalay to allow safe access. Defendant did not respond and did not move the ship.

Ultimately Coast Guard officers boarded the Mandalay. They announced their presence, but Defendant[2] remained below deck. The boarding team knocked on the hatch to the main cabin, announced their presence again, and opened the hatch. They saw Defendant lying on the floor of the main cabin. At some point Defendant got up and tried to open a drawer. Defendant stated he was looking for the Mandalay's documentation.

Officer Piker asked Defendant to sit in a seat while the boarding team conducted a safety sweep. Officer Piker then began questioning Defendant to determine the vessel's nationality.

---

[1] On June 24, 2019, however, the United States Department of State certified that the Canadian government denied the Mandalay's registry in Canada.

[2] By the conclusion of their interaction, the Coast Guard officers determined Defendant was the only person on board.

3 - OPINION AND ORDER

According to the government, Defendant "was slurring his speech[,] . . . had a difficult time answering the questions, [and was] getting more sluggish and unresponsive to questions." At one point during the interview the boat rolled and Defendant fell off his seat onto the deck. Defendant said he had not hurt himself, but he stayed on the floor and appeared to fall asleep. After the boarding team tried unsuccessfully to rouse Defendant, they called in a medic.

The medic diagnosed Defendant with a drug overdose and gave him NARCAN. The medic, however, was unable to revive Defendant and, therefore, ordered him to be taken back to the Alert for further treatment. Defendant was ultimately airlifted to a hospital in Astoria, Oregon.

The boarding team remained on the Mandalay to look for a Hull Identification Number (HIN) and/or registration documents. The medic asked the team also to look for information identifying Defendant and anything that might explain his condition. The boarding team found a wallet with Defendant's Canadian driver's license, cards with information "relating to a hospital and diabetes," and a Ziploc bag containing a green leafy substance.

At some point the boarding team saw and inspected almost 30 jugs of yellow-tinted liquid that were stored on both sides of the Mandalay's outer deck. An ion scan swab and a test with a Narcotics Identification Kit (NIK) identified the liquid in the

jugs as methamphetamine.

Eventually the Mandalay was towed to Portland, Oregon, and was searched pursuant to a warrant. The search revealed the Mandalay was carrying a substantial amount of methamphetamine and pentobarbital.

## PROCEDURAL BACKGROUND

On July 23, 2019, Defendant was charged in a Superseding Indictment with one count of conspiracy to distribute methamphetamine in violation of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70503(a)(1) and 70506(a) and (b); one count of possession with intent to distribute methamphetamine in violation of MDLEA, 46 U.S.C. §§ 70503(a)(1) and 70506(a); one count of conspiracy to distribute pentobarbital in violation of MDLEA, 46 U.S.C. §§ 70503(a)(1) and 70506(a) and (b); and one count of possession with intent to distribute pentobarbital in violation of MDLEA, 46 U.S.C. §§ 70503(a)(1) and 70506(a).

On November 8, 2019, Defendant filed a Motion (#37) to Dismiss the Superseding Indictment on the ground that this Court lacks jurisdiction.

On November 21, 2019, Defendant was charged in a Second Superseding Indictment with one count of possession with intent to distribute methamphetamine in violation of MDLEA, 46 U.S.C. §§ 70503(a)(1) and 70506(a), and one count of possession with

intent to distribute pentobarbital in violation of MDLEA, 46 U.S.C. §§ 70503(a)(1) and 70506(a).

Although Defendant did not refile his Motion to Dismiss as to the Second Superseding Indictment, the Court considers Defendant's Motion (#37) to apply to the intervening Second Superseding Indictment.

On December 18, 2019, the Court heard oral argument on Defendant's Motion to Dismiss for lack of jurisdiction.

## DISCUSSION

Defendant asserts this Court lacks jurisdiction because the government has not established any nexus between Defendant's alleged unlawful conduct and the United States. Defendant also asserts the MDLEA is unconstitutional.

### I. The Law

Article I, Section 8 of the Constitution (the Define and Punish Clause), grants Congress the authority to "define and punish piracies and felonies committed on the high seas, and offenses against the law of nations." The Supreme Court has interpreted this Clause as granting Congress the authority to define and to punish piracy, felonies on the high seas, and offenses against the law of nations. *United States v. Aragon*, No. 15 CR 292 (PGG), 2017 WL 2889499, at *3 (S.D.N.Y. July 5, 2017)(citing *United States v. Smith*, 18 U.S. 153, 158-59 (1820)).

6 - OPINION AND ORDER

When enacting the MDLEA Congress invoked "its constitutional power to define and punish Piracies and Felonies committed on the high Seas." *United States v. Matos-Luchi*, 627 F.3d 1, 3 (1st Cir. 2010). The Ninth Circuit has repeatedly upheld "the MDLEA as a proper exercise of Congress' constitutional power under the Piracies and Felonies Clause." *See, e.g., United States v. Perlaza*, 439 F.3d 1149, 1160 (9th Cir. 2006)("Binding precedent compels us to find that the MDLEA is constitutional under the Piracies and Felonies clause and to reject Defendants' constitutional challenge to it."); *United States v. Moreno-Morillo*, 334 F.3d 819, 824-25 (9th Cir. 2003)("Congress . . . was acting within its constitutionally conferred authority when it passed the MDLEA. That authority is expressly conferred by Article I, Section 8, Clause 10."); *United States v. Aikins*, 946 F.2d 608 (9th Cir. 1991)(upholding the MDLEA as a proper exercise of Congress' constitutional power under the Piracies and Felonies Clause); *United States v. Davis*, 905 F.2d 245 (9th Cir. 1990) (same).

The MDLEA makes it unlawful to "knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" on "a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. §§ 70503(a). The MDLEA defines a "vessel subject to the jurisdiction of the

7 - OPINION AND ORDER

United States" to include a "vessel without nationality," 46 U.S.C. § 70502(c)(1)(A), which the Act defines to include "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed." 46 U.S.C. § 70502(d)(1)(A). The MDLEA defines a "claim of nationality or registry" to include "a verbal claim of nationality or registry by the master or individual in charge of the vessel." 46 U.S.C. § 70502(e)(1). The MDLEA also provides: "The response of a foreign nation to a claim of registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2).

Finally, "[j]urisdictional issues" that arise under the MDLEA "are preliminary questions of law to be determined solely by the trial judge" before trial. 46 U.S.C. § 70504(a).

## II. The Mandalay was a "vessel without nationality" within the meaning of the MDLEA.

As noted, the MDLEA defines a vessel without a nationality (a stateless vessel) to include "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registly is claimed." 46 U.S.C. § 70502(d)(1)(A). When the Coast Guard asked Defendant about the Mandalay's country of registration, Defendant asserted he was of Canadian nationality and that the Mandalay was of Canadian registration. As noted, however, the record reflects the Mandalay hull bore a marking of "Seattle" and the United States

8 - OPINION AND ORDER

Department of State has certified that Canada has denied the Mandalay is registered in Canada. Thus, the "master" of the Mandalay (Defendant) claimed Canadian registry and that registry has been denied by Canada. The Court, therefore, concludes on this record that the Mandalay was a vessel without a nationality at the time of the stop.

Accordingly, the Mandalay was a "vessel subject to the jurisdiction of the United States" pursuant to the MDLEA, 46 U.S.C. § 70502(c)(1)(A).

**III. Due Process**

Defendant also asserts that even if the Court concludes the government has established that the United States has "statutory jurisdiction" over this matter pursuant to the MDLEA, the government has not satisfied due-process requirements. Specifically, Defendant asserts the government is also required to establish a nexus between Defendant's alleged unlawful conduct and the United States to satisfy "constitutional jurisdiction."

The Ninth Circuit, however, has consistently held "a showing of statelessness effectively moots the nexus requirement because those aboard stateless vessels effectively have waived their right to object to the exercise of jurisdiction over them by the United States courts." *Moreno-Morillo*, 334 F.3d at 828 ("[T]he United States has jurisdiction by virtue of the statelessness of the vessel in question, [and] we have made clear that the

9 - OPINION AND ORDER

statelessness determination obviates the need for any showing of nexus."). *See also United States v. Perlaza*, 439 F.3d at 1161 ("There is one exception to [the] 'constitutional jurisdiction' requirement: if a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them.") (quotation omitted)); *United States v. Caicedo*, 47 F.3d 370, 372-73 (9th Cir. 1995)(same); *United States v. Juda*, 46 F.3d 961, 966 (9th Cir. 1995)("Neither our court, nor any other circuit . . . has ever held that a nexus requirement is constitutionally required to support jurisdiction over a stateless vessel.").

Moreover, the Ninth Circuit has already rejected due-process arguments similar to those made by Defendant. For example, in *Caicedo* the Ninth Circuit explained:

> [I]nternational law restrictions on the right to assert jurisdiction over foreign vessels on the high seas and the concomitant exceptions have no applicability in connection with stateless vessels. Such vessels are international pariahs. By attempting to shrug the yoke of any nation's authority, they subject themselves to the jurisdiction of all nations solely as a consequence of the vessel's status as stateless.
>
> * * *
>
> A defendant would have a legitimate expectation that because he has subjected himself to the laws of one nation, other nations will not be entitled to exercise jurisdiction without some nexus. Punishing crimes committed on a foreign flag ship is like punishing a crime committed on foreign

10 - OPINION AND ORDER

> soil; it is an intrusion into the sovereign
> territory of another nation. As a matter of
> comity and fairness, such an intrusion should not
> be undertaken absent proof that there is a
> connection between the criminal conduct and the
> United States sufficient to justify the United
> States' pursuit of its interests. But where a
> defendant attempts to avoid the law of *all* nations
> by traveling on a stateless vessel, he has
> forfeited these protections of international law
> and can be charged with the knowledge that he has
> done so. Because stateless vessels do not fall
> within the veil of another sovereign's territorial
> protection, all nations can treat them as their
> own territory and subject them to their laws.

47 F.3d at 372 (quotations omitted)(emphasis in original). The Ninth Circuit further explained in *Juda*:

> Compliance with international law, of course, does
> not conclusively determine whether due process is
> satisfied. Thus, we do not lose sight of the
> ultimate question: would application of the
> statute to the defendant be arbitrary or
> fundamentally unfair? We conclude that
> application of section 1903 to these defendants is
> neither arbitrary nor fundamentally unfair.
> Defendants had ample notice that individuals on
> board stateless vessels take the chance that any
> nation might exercise jurisdiction over their
> illegal activities. Moreover, if no nation
> exercises jurisdiction, such vessels would
> represent floating sanctuaries from authority and
> constitute a potential threat to the order and
> stability of navigation on the high seas.
> Accordingly, we conclude that it is not
> unreasonable, arbitrary, or fundamentally unfair
> for the United States to apply section 1903 to
> these defendants.

46 F.3d at 967 (quotations omitted). The Ninth Circuit, therefore, concluded the Due Process Clause does not require the government to establish a nexus to support the court's jurisdiction over a stateless vessel pursuant to the MDLEA. *Id.*

11 - OPINION AND ORDER

Defendant asserts the reasoning of *Moreno-Morillo* and *Juda* is "subject to challenge," but Defendant does not cite any Ninth Circuit case in which the court held a nexus showing was required to establish "constitutional" jurisdiction when a vessel is deemed stateless under the MDLEA.

Accordingly, the Court concludes it is bound by *Moreno-Morillo, Juda,* and *Caicedo*, and, therefore, the government is not required to establish a nexus between Defendant's alleged unlawful conduct and the United States to satisfy due-process requirements or to prove this Court's jurisdiction.

**IV. MDLEA is constitutional.**

Finally, Defendant asserts the MDLEA is unconstitutional. The Ninth Circuit, however, has unequivocally held "the MDLEA is constitutional under the Piracies and Felonies clause." *Perlaza*, 439 F.3d at 1160. *See also United States v. Aikins*, 946 F.2d 608 (9th Cir. 1991), and *United States v. Davis*, 905 F.2d 245 (9th Cir. 1990)(upholding the MDLEA as a proper exercise of Congress' constitutional power under the Piracies and Felonies Clause).

Accordingly, pursuant to *Perlaza, Aikins,* and *Davis*, this Court concludes the MDLEA is constitutional, and, therefore, denies Defendant's Motion to Dismiss for lack of jurisdiction.

**CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Motion (#37)

12 - OPINION AND ORDER

to Dismiss.

IT IS SO ORDERED.

DATED this 7th day of January, 2020.

_____
ANNA J. BROWN
United States Senior District Judge